**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

Barbara Davison, et. al.,

      Plaintiffs,

      v.                                        Case No. 2:04-cv-852
                                                     JUDGE GRAHAM

Cole Sewell Corp., et. al.,

      Defendants.


<u>OPINION AND ORDER</u>


    Barbara Davison, as administratix of the estate of decedent Norman Davison, brings this action for negligence and wrongful death against Defendants Pella Corporation and Cole Sewell Corporation. Plaintiff alleges that Mr. Davison was at a Home Depot store in Reynoldsburg, Ohio on April 5, 2000 looking at an in-store display constructed and maintained by Defendants. Plaintiff claims that Mr. Davison suffered a head injury when a metal bracket fell from the display and struck him. Plaintiff further claims that the injury proximately caused Mr. Davison to develop depression and to later commit suicide on March 11, 2003.

    This matter is before the Court on Defendants' motion for summary judgment. Defendants argue that the negligence claim fails because Plaintiff has no evidence from which a juror could reasonably find that Defendants were negligent or find that Defendants' alleged negligence proximately caused Mr. Davison's injury. Plaintiff's expert, engineer Richard H. Silverman,

1

submitted a report identifying sixteen possible causes for why the store display failed. Defendants argue that the expert report must be excluded from consideration because Mr. Silverman could not specify the probable cause of Mr. Davison's alleged injury.

With respect to the wrongful death claim, Defendants argue that Mr. Davison's suicide was not a foreseeable result of the alleged negligence. Defendants contend that the deposition testimony of Plaintiff's neuropsychologist, Dr. Delphi M. Toth, fails to establish by a sufficient degree of probability that the alleged accident caused Mr. Davison to commit suicide. Defendants further contend that Dr. Toth is not competent to testify about the medical aspects of the alleged injury because she is not a medical doctor.

I.   **Background**

The record before the Court is scarce on facts. The only evidentiary materials on the record are the deposition and report of engineer Richard H. Silverman and the deposition of neuropsychologist Dr. Delphi M. Toth. To the extent that any documents were discovered, any affidavits given, or any depositions taken of the decedent, Barbara Davison, eyewitnesses to the incident, Home Depot employees, representatives of Defendants, or treating physicians, none of those materials have been submitted.

The only description of record of the alleged incident is found in the complaint, which states that on "April 5, 2000, Decedent Norman Davison was a business invitee on the premises of a Home Depot retail store when he was injured upon being struck in the head and neck by a metal bracket that was part of a display"

constructed and maintained by Defendants.  Compl., ¶¶6-7.

Plaintiff has not offered any direct evidence regarding Mr. Davison's alleged injury.  Plaintiff has not submitted any diagnosis from a treating physician or any other medical records. Aside from the testimony of Plaintiff's non-treating neuropsychologist, there is no evidence about the nature, type, extent, or seriousness of the injury.

The complaint describes Barbara Davison as the "life partner" of Norman Davison.[1]  She was appointed the administratix of Mr. Davison's estate.  She brought suit in the Court of Common Pleas of Franklin County, Ohio.  The complaint alleges that the store display was defective and created an unreasonably safe condition, of which Defendants failed to warn business invitees.  The complaint further alleges that Defendants failed to exercise reasonable care in the construction and maintenance of the display. "As a direct and proximate result, Decedent Norman Davison suffered great physical and emotional pain and anguish, incurred medical bills for physician's care, and lost wages from the date of his injury until his death."  Compl., ¶12.  The complaint also alleges that as "a direct and proximate result" of his injuries, Mr. Davison committed suicide on March 11, 2003.  Id., ¶27.

Defendants removed the action to federal court on grounds of diversity of citizenship.  The Davisons were Ohio residents, while Defendants were Iowa corporations with their principal places of business in Iowa.

---

[1]  Defendants filed a motion to dismiss Plaintiff's loss of consortium claim on the ground that Barbara Davison was not the legal spouse of Norman Davison.  Plaintiff responded by confirming that she was not Mr. Davison's legal spouse.

3

This matter is now before the Court on Defendants' motion for summary judgment, which is granted for the reasons stated below.

## II. __Standard of Review__

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction & Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir. 1992)(per curium).  The party that moves for summary judgment has the burden of showing that there are no genuine issues of material fact in the case at issue, LaPointe, 8 F.3d at 378, which may be accomplished by pointing out to the court that the nonmoving party lacks evidence to support an essential element of its case.  Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).  In response, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339-40 (6th Cir. 1993).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis added); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th

4

Cir. 1989).

In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993)(quoting Anderson, 477 U.S. at 251-53). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). See also Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. See also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994). Finally, a district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

## III. **Discussion**

### A. **No Evidence of an Accident**

Plaintiff's complaint alleges that Mr. Davison was struck by a metal bracket at a Home Depot store on April 5, 2000 while he was looking at an in-store display for Defendants' products.

The record before the Court contains no evidence that the alleged accident ever happened. Defendants' motion for summary judgment argues that Plaintiff cannot show that Defendants

5

committed a negligent act which proximately caused Mr. Davison's alleged injury. The Court agrees. There is no affidavit or deposition from Mr. Davison or Ms. Davison, if she was present, to establish that an accident occurred in the first instance. Nor has Plaintiff submitted an accident report or affidavit from a Home Depot employee or eyewitness. In short, there is no evidence on the record that Mr. Davison was involved in an accident at a Home Depot store in Reynoldsburg, Ohio on April 5, 2000.

Thus, Plaintiff has failed to respond to Defendants' motion with evidentiary materials from which a juror could reasonably find that an accident ever occurred.[2] See Watters v. TSR, Inc., 904 F.2d 378, 381 (6th Cir. 1990) (holding that plaintiff in wrongful death/suicide case "was not free simply to rest on her pleadings" in response to well-supported motion for summary judgment). For this reason alone, Defendants' motion for summary judgment should be granted.

**B. Negligence Claim**

Even assuming that an accident did occur, the Court finds that Plaintiff's negligence claim fails. Plaintiff asserts that the display for Defendants' products was defective and unreasonably safe and that Defendants failed to exercise reasonable care in the construction and maintenance of the display. Plaintiff contends that Defendants' negligence proximately caused personal injury to Mr. Davison.

The elements of a negligence claim are: (1) the existence of

---

[2] Both of Plaintiff's experts based their analysis on the assumption that an accident did happen. Despite the experts' statements that an accident happened, neither expert witnessed the alleged accident and their statements are not factual evidence that an accident did occur. Fed. R. Evid. 602.

a legal duty, (2) the defendant's breach of that duty, and (3) injury resulting proximately from the breach. <u>Mussivand v. David</u>, 45 Ohio St.3d 314, 318, 544 N.E.2d 265, 270 (Ohio 1989). Proximate cause "'requires that the injury sustained shall be the natural and probable consequence of the negligence alleged; that is, such consequence as under the surrounding circumstances of the particular case might, and should have been foreseen or anticipated by the wrongdoer as likely to follow his negligence act.'" <u>Jeffers v. Olexo</u>, 43 Ohio St.3d 140, 143, 539 N.E.2d 614, 617 (Ohio 1989) (quoting <u>Ross v. Nutt</u>,, 177 Ohio St. 113, 114, 203 N.E.2d 118, 120 (Ohio 1964)).

Plaintiff alleges that Mr. Davison was a business invitee, an allegation that Defendants do not challenge. A business owner owes invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition, including an obligation to warn invitees of any latent or hidden dangers, so as not to unnecessarily and unreasonably expose its invitees to danger. <u>Paschal v. Rite Aid Pharmacy, Inc.</u>, 18 Ohio St.3d 203, 203, 480 N.E.2d 474, 475 (Ohio 1985); <u>Perry v. Eastgreen Realty Co.</u>, 53 Ohio St.2d 51, 52, 372 N.E. 335, 336 (Ohio 1978).

Plaintiff further alleges that Defendants breached that duty by failing to exercise reasonable care in constructing and maintaining the store display and by failing to warn invitees of the unsafe condition of the display. According to Plaintiff, a metal bracket fell from the display and hit Mr. Davison in the head, proximately causing him a head injury. In support of this contention, Plaintiff has submitted an expert report from engineer Richard H. Silverman. Mr. Silverman believes that the accident

7

"was caused by some sort of failure of a part of the display structure." Silverman Report, p. 1.  The report lists sixteen possible causes for the alleged accident, such as "insufficient screws," misaligned hinges, and insufficient inspection. Id., p. 2.  According to the report, "[i]t is impossible to establish the specific cause for this failure" because the display was dismantled right after the accident occurred.  Id., p. 1.  Mr. Silverman testified at deposition that he had "absolutely no idea what caused this [accident]."  Aug. 28, 2005 Dep. of Richard H. Silverman, p. 91.  Mr. Silverman concludes in his report that Defendants were "totally responsible" for the accident.  Silverman Report, p. 2.

Defendants argue that Mr. Silverman's report and testimony are legally insufficient.  The Court agrees.  Mr. Silverman's opinions are without foundation and they fail to specify the cause of Mr. Davison's alleged head injury with a sufficient degree of probability.

Federal Rule of Evidence 702 requires district courts to ensure that an expert's scientific testimony "rests on a reliable foundation."  Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597, 113 S.Ct. 2786, 2799 (1993).  The Silverman report states, without further elaboration, that the basis of his opinion was "[r]eview of depositions, photographs, reports and other materials."  Silverman Report, p. 1.  There is no indication whose depositions, what photographs, or which reports Mr. Silverman reviewed.

At deposition, Mr. Silverman was asked about the materials he brought with him in a folder.  The folder contained the depositions of Mr. Davison and Ms. Davison, a report from Defendants' expert,

a Home Depot accident report, and depositions of several persons whose names are unfamiliar to the Court.  See Silverman Dep., pp. 7-8.  None of these materials are on the record.  Though having all of those materials, Mr. Silverman mentioned just four items on which he based his report: (1) photographs of the display in the Reynoldsburg, Ohio store; (2) visits he made to a Home Depot store in Boston, Massachusetts to look at a display in that store; (3) Ms. Davison's deposition testimony that a screw that "might have been there [in the display]" was missing; and (4) Internet research about screws.  Id., pp. 61, 62, 69.

These items do not form a reliable foundation.  Most problematic is Mr. Silverman's visit to a Home Depot store in Boston.  There is no evidence establishing that the display Mr. Silverman viewed in Boston was the same as the one in Reynoldsburg where Mr. Davison was allegedly injured.  Mr. Silverman never went to the Reynoldsburg store, see Silverman Dep., p. 99, and he admitted that the photographs he viewed of the Reynoldsburg store were of such poor quality that they were "impossible to follow." Id., p. 62.  Mr. Silverman stated the display he saw in the Boston store "could have been similar" to the one in the photographs.  Id. The Court finds that Mr. Silverman lacked a reliable foundation upon which to state his opinion on the condition of the Reynoldsburg store display and on the cause of the alleged accident to Mr. Davison.  See Daubert, 509 U.S. at 590, 113 S.Ct. at 2795 (expert testimony may not be based on speculation); McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 801 (6th Cir. 2000) ("An expert's opinion, where based on assumed facts, must find some support for those assumptions in the record."); Shaw v.

9

<u>Strackhouse</u>, 920 F.2d 1135, 1142 (3d Cir. 1990) (expert opinion that assumes facts not supported by the record should be disregarded).

Mr. Silverman's opinions are also legally insufficient because he failed to identify the cause of the alleged injury with a sufficient degree of certainty. Plaintiff has attempted to establish causation through expert opinion. Expert testimony may be used to establish proximate cause when a case involves "complex issues outside the area of common knowledge, such as an injury's cause and effect." <u>Laderer v. St. Rita's Med.</u>, 122 Ohio App.3d 587, 598, 702 N.E.2d 476, 483 (Ohio Ct. App. 1997) (citing <u>Darnell v. Eastman</u>, 23 Ohio St.2d 13, 17, 261 N.E.2d 114, 116 (Ohio 1970)). An expert attempting to establish proximate cause must state his opinion in terms of probability. <u>Shumaker v. Oliver B. Cannon & Sons, Inc.</u>, 28 Ohio St.3d 367, 369, 504 N.E.2d 44, 46 (Ohio 1986). "Opinions stated with a lesser degree of certainty must be excluded as speculative." <u>Id</u>. Probability means more than a 50 percent likelihood, and proof of the possibility of a causal connection is insufficient. <u>Id</u>. at 369, n.3; <u>Stinson v. England</u>, 69 Ohio St.3d 451, 455, 633 N.E.2d 532, 537 (Ohio 1994) ("[A]n event is probable if there is a greater than fifty percent likelihood that it produced the occurrence at issue.").

Mr. Silverman was only able to identify possible causes of the alleged accident. The report said that there was "some sort of failure" with the display, but it was "impossible to establish the specific cause." Silverman Report, p. 1. Mr. Silverman testified that "we cannot identify specific cause or causes for the incident" and that "there could be other possible causes" than the sixteen he

10

listed.  Silverman Dep., pp. 87, 90.  He then conceded, "We have
absolutely no idea what caused this."  Id., p. 91.

Though proximate cause is usually a question of fact for the
jury, see Uddin v. Embassy Suites Hotel, 165 Ohio App.3d 699, 712,
848 N.E.2d 519, 529 (Ohio Ct. App. 2005), speculation and
conjecture are insufficient as a matter of law to establish
proximate cause.  Whiting v. Ohio Dept. of Mental Health, 141 Ohio
App.3d 198, 203, 750 N.E.2d 644, 647 (Ohio Ct. App. 2001); see also
Stinson, 69 Ohio St.3d at 455, 633 N.E.2d at 537 (stating that
because "expression of probability is a condition precedent to the
admissibility of expert opinion regarding causation, it relates to
the competence of such evidence and not its weight").  Here, Mr.
Silverman's opinions fall woefully short of identifying the cause
of Mr. Davison's alleged injury with a sufficient degree of
probability and, therefore, must be excluded from consideration.
See Squires v. Luckey Farmers, Inc., No. OT-03-046, 2004 WL
2072453, at *9 (Ohio Ct. App. Sept. 17, 2004) (holding that an
expert opinion that an injury "could be causally linked" to a
negligent act is legally insufficient to establish proximate
cause).

In sum, Plaintiff's negligence claim cannot survive
Defendants' motion for summary judgment.  Mr. Silverman's report
and testimony are the only pieces of evidence submitted by
Plaintiff that go to the issues of the condition of the store
display and the cause of Mr. Davison's alleged head injury.  Mr.
Silverman's opinions are without foundation and are not stated with
a sufficient degree of probability.

C.    **Wrongful Death Claim**

The complaint further asserts that the alleged accident proximately caused Mr. Davison to commit suicide on March 11, 2003.

To maintain a wrongful death action on a theory of negligence, a plaintiff must show: (1) the existence of a duty owed to plaintiff's decedent, (2) a breach of that duty, and (3) proximate causation between the breach of duty and the death. Littleton v. Good Samaritan Hosp. & Health Ctr., 39 Ohio St.3d 86, 92, 529 N.E.2d 449, 454-455 (Ohio 1988) (citing Bennison v. Stillpass Transit Co., 5 Ohio St.2d 122, 214 N.E.2d 213 (Ohio 1966)).

Defendants argue that Plaintiffs cannot prove proximate causation between the alleged breach and Mr. Davison's suicide. In Ohio, "[t]he general rule is that suicide constitutes an intervening force which breaks the line of causation stemming from the wrongful act, and, therefore, the wrongful act does not render the defendant civilly liable." Fischer v. Morales, 38 Ohio App.3d 110, 112, 526 N.E.2d 1098, 1101 (Ohio Ct. App. 1987); see also Thomas v. Parma, 88 Ohio App.3d 523, 527, 624 N.E.2d 337, 340 (Ohio Ct. App. 1993); Payne v. Village of Newburgh Heights, No. 58380, 1991 WL 53898, at *4 (Ohio Ct. App. Apr. 11, 1991). The tortfeasor is liable only if he could have reasonably foreseen that the suicide was likely to happen. Cascone v. Herb Kay Co., 6 Ohio St.3d 155, 159, 451 N.E.2d 815, 819 (Ohio 1983); Taylor v. Webster, 12 Ohio St.2d 53, 56, 231 N.E.2d 870, 872 (Ohio 1967). See also Ko v. Sears, Roebuck & Co., No. 97-2289, 1999 WL 98561, at *2 (6th Cir. Jan. 27, 1999) (noting under Michigan law that "if the act of the tortfeasor spawns a mental illness which in turn causes the suicide, then the causal chain is not broken and liability will

12

attach).

Plaintiff relies on the testimony of neuropsychologist Dr. Delphi M. Toth to argue the following theory of causation: the alleged accident caused a frontal lobe injury to Mr. Davison; the frontal lobe injury caused him develop depression; and the depression, combined with his physical pain, caused Mr. Davison to commit suicide. Dr. Toth did not treat Mr. Davison, but was brought in as an expert after speaking with Barbara Davison and reviewing Mr. Davison's medical records, which have not been submitted as evidence. Dr. Toth stated that it was her "impression" that Mr. Davison suffered a frontal lobe injury to his brain.[3] Nov. 30, 2005 Dep. of Dr. Delphi M. Toth, p. 24. Later in her deposition, Dr. Toth stated that Mr. Davison had a "probable" closed head injury. Id., pp. 49-50. Dr. Toth testified that Mr. Davison's post-accident behavior, as described by Barbara Davison, was "indicative of frontal head injuries or generalized head injuries." Id., p. 24. Dr. Toth stated that depression is "common" in patients who have suffered a closed head injury, "especially a frontal injury." Id., p. 44. Dr. Toth concluded that depression, feelings of hopelessness, and physical pain were factors that "could" have led to Mr. Davison's suicide. Id., pp. 49-50.

As with Mr. Silverman's report and testimony, the Court finds that Dr. Toth's testimony is without foundation. Experts may assume hypothetical facts when those facts are supported by the record. See Novartis Corp. v. Ben Venue Laboratories, Inc., 271

---

[3] Dr. Toth did not define what a frontal lobe injury is, but her testimony implies that it refers to a region or location of the brain.

F.3d 1043, 1051 (Fed. Cir. 2001) (the "factual predicate of an expert's opinion must find some support in the record, [and] mere 'theoretical speculations' lacking a basis in the record will not create a genuine issue of fact."); Bailey PVS Oxide Delta, L.L.C. v. Plas-Tank Industries, Inc., 330 F. Supp. 2d 930, 931 (N.D. Ohio 2004) ("To be admissible, the factual basis for an expert's opinion must find support in the record.").  The medical records Dr. Toth reviewed are not on the record, nor is there any documentation of her meetings with Barbra Davison.  Thus, Dr. Toth's opinions lack a basis on the record and are not admissible.  See Daubert, 509 U.S. at 590, 113 S.Ct. at 2795; McLean, 224 F.3d at 801; Shaw, 920 F.2d at 1142.

Beyond the lack of foundation, Defendants argue that Dr. Toth is not competent to testify about a brain injury because she is a neuropsychologist, not a medical doctor.  When Defendants questioned Dr. Toth about her qualifications to diagnose an injury to the brain, she asserted that a psychologist is qualified to diagnose a frontal lobe injury.  Toth Dep., p. 29.  According to Dr. Toth, radiography (such as a CT scan, MRI, or x-ray) will not detect every frontal lobe injury; rather, some such injuries are diagnosed from a patient's behavior and complaints.  Id., pp. 29-30.  Dr. Toth testified that, based on Mr. Davison's post-accident behavior, she believed that Mr. Davison suffered a frontal lobe injury.  Id., p. 50.  Dr. Toth formed this opinion from Barbara Davison's description of Mr. Davison's "personality changing and his whole demeanor being different, his attitude being different," his mood swings, his feeling like he could not play or help with their children, and his perception that he was not the "man [he]

14

should be." Id., pp. 22, 24, 27-28, 32.

The Court agrees that Dr. Toth is not competent to diagnose Mr. Davison's brain injury or state an opinion about the cause. In Hicks v. Cummings, No. S-85-49, 1987 WL 12540, at *3 (Ohio Ct. App. June 12, 1987), plaintiff attempted to use the testimony of a neuropsychologist to establish the existence of brain damage. The testimony was intended to show a causal relationship between a car accident in which plaintiff was involved and her alleged brain damage. The trial court excluded the testimony on the grounds that the neuropsychologist was not competent to make a medical diagnosis. The court of appeals affirmed, holding that "Appellant was attempting to have Dr. McSweeny make a medical diagnosis, i.e., that appellant suffered brain damage as the result of the accidents she was involved in with appellees. The trial court correctly disallowed this testimony on the basis that Dr. McSweeny was not competent to express a medical opinion." 1987 WL 12540, at *3 (citing Darnell v. Eastman, 23 Ohio St. 2d 13, 17, 261 N.E.2d 114, 116 (Ohio 1970) (requiring that expert testimony on the issue of proximate cause between an injury and a physical disability "must be established by the opinion of medical witnesses competent to express such opinion")).

The Court is not adopting a rule that all psychologists are unqualified to diagnose a brain injury. See Huntoon v. TCI Cablevision of Colorado, Inc., 969 P.2d 681, 689 (Colo. 1998) ("[N]europsychologists are not per se unqualified to speak on the causation of organic brain injury."). The majority rule among states is that "neuropsychologists may, *with the proper foundation*, opine on the physical cause of organic brain injury." Id. at 690

15

(citing cases) (emphasis added).  For instance, in one Colorado case, a neuropsychologist was allowed to testify about his diagnosis of a brain injury because he had much experience working with physicians to diagnose brain injuries and because he had personally evaluated the injured party.  See Gast v. City of Fountain, 870 P.2d 506, 512 (Colo. Ct. App. 1993).  And in a Florida case, a neuropsychologist was allowed to give a medical opinion about the cause of brain damage because he had conducted study, research, and experimentation of the brain for several decades.  See Broward County School Bd. v. Cruz ex rel. Cruz, 761 So. 2d 388, 395 (Fla. Ct. App. 2000).

In order for Dr. Toth to have the proper foundation to state opinions on Mr. Davison's alleged brain injury, she must have specialized knowledge or experience in the area of brain injuries. Fed. R. Evid. 702.  However, Dr. Toth never personally evaluated Mr. Davison, and Plaintiff has not provided any specific facts about Dr. Toth's training, skills, or background to establish that she has the expertise to diagnose a brain injury or state an opinion about the cause of such an injury.  Therefore, her opinion that Mr. Davison had a frontal lobe injury and that the injury was caused by the alleged accident must be excluded from consideration. See Daubert, 509 U.S. at 597, 113 S.Ct. at 2799 (requiring trial courts to ensure expert testimony "rests on a reliable foundation").

Aside from Dr. Toth's lack of competence to state an opinion about Mr. Davison's brain injury, Dr. Toth's opinions concerning his depression and suicide must be excluded because they are not stated with a sufficient degree of certainty.  It is Plaintiff's

16

theory of the case that Mr. Davison's alleged brain injury caused him to develop depression.  This is a matter on which Dr. Toth, a psychologist, is competent to testify, but nowhere did she opine that the injury probably caused Mr. Davison to have depression. Instead, Dr. Toth testified that: depression is "common" in patients following a frontal lobe injury; a person with a frontal lobe injury "might be more emotionally liable" to go into depression; depression develops "in a good percentage of people" with such injuries; and "depression occurs in about a third" of patients with head injuries.  Toth Dep., pp. 44, 49, 66, 67.

While an expert is not required to use "magic words" to establish probability, "there are some words, left unmodified, that are obviously insufficient to establish probability." Wells v. Miami Valley Hospital, No. 13298, 1993 WL 333, 639, at *7 (Ohio Ct. App. Aug. 30, 1993) (finding that "very strong chance" was insufficient).  The words Dr. Toth used – "common," "might be," "good percentage" – are too broad and speculative to support a finding that the alleged brain injury probably caused depression in Mr. Davison.  The only specific statement that Dr. Toth made was that one-third of head injury patients develop depression.  This is not sufficient, for probability means more than a 50 percent likelihood. Stinson v. England, 69 Ohio St.3d 451, 455, 633 N.E.2d 532, 537 (Ohio 1994).

The final piece of Plaintiff's wrongful death theory is that Mr. Davison's alleged depression, when combined with his alleged physical pain, caused him to commit suicide.  Dr. Toth's testimony on this subject was again lacking in certainty.  She stated that: "a certain percentage" of people with depression attempt suicide;

17

Mr. Davison's suicide was "possibly" the result of depression and chronic pain; and depression and pain "could be" contributing factors and "can lead" to suicide.  Toth Dep., pp. 44, 48, 49, 50. All of these statements are too speculative to support a finding of probability.  At one point, Dr. Toth stated that there is a "50/50 possibility of a suicide attempt once the person's depressed." Id., p. 45.  This too is insufficient under Ohio law.  See Stinson, 69 Ohio St.3d at 455, 633 N.E.2d at 537 (holding that probability requires "a *greater than* fifty percent likelihood") (emphasis added).

Thus, the Court finds that a reasonable juror could not find that Defendants' alleged negligence proximately caused Mr. Davison to commit suicide.  Defendants' motion for summary judgment is grounded in well-established Ohio law that suicide is an intervening force which breaks the line of causation.  See Fischer, 38 Ohio App.3d at 112, 526 N.E.2d at 1101; Thomas, 88 Ohio App.3d at 527, 624 N.E.2d at 340.  Plaintiff has failed to respond with any evidence from which a juror could find that Mr. Davison's suicide was a reasonably foreseeable result of Defendants' alleged negligence.

**IV.  Conclusion**

For the reasons stated above, Defendants' January 6, 2006 motion for summary judgment (doc. 40) is GRANTED as to all counts. The Clerk of Court is instructed to enter final judgment in favor of the Defendants.

s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: July 28, 2006